UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

       v.                        15 Cr. 95 (AJN)

JAMAL BLAIR,

          Defendant.

------------------------------x

                              New York, N.Y.
                              November 16, 2016
                              10:30 a.m.


Before:

                    HON. ALISON J. NATHAN,

                              District Judge


                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JESSICA FEINSTEIN
     Assistant United States Attorney

RUSSELL T. NEUFELD
DAVID STERN
     Attorneys for Defendant

1              (Case called)

2              MS. FEINSTEIN:  Good morning, your Honor, Jessica

3    Feinstein for the government.

4              THE COURT:  Good morning, Ms. Feinstein.

5              MR. NEUFELD:  Russell Neufeld and David Stern for

6    Mr. Blair.  Good morning.

7              THE COURT:  Good morning to both of you.  Good

8    morning, Mr. Blair.  We are starting half an hour late.  I need

9    to step off the bench at about 11:15.  If we are not finished

10   by then, we will return this afternoon to complete.  This was

11   scheduled for 10:00.  We are starting half an hour late.

12             MR. STERN:  Judge, I'm sorry.  That's my fault.  I

13   didn't realize the line would be as long as it was.  I should

14   have gotten here earlier.  It was my fault.

15             THE COURT:  I have been informed, Mr. Stern, that

16   Mr. Blair wishes to plead guilty to Count One of the

17   indictment, which is S2 15 Cr. 95, is that correct?

18             MR. STERN:  It is.

19             THE COURT:  Mr. Blair, before I accept your guilty

20   plea I am going to ask you certain questions so that I can

21   establish some my satisfaction that you wish to plead guilty

22   because you are guilty and not for some other reason and also

23   to establish that you know what you'll be giving up by pleading

24   guilty.  If you don't understand any of my questions or if you

25   want time to consult with your lawyer for any time or for any

1   reason, let me know and I will give you as much time as you

2   need.  OK?

3            THE DEFENDANT:  All right.  Correct.

4            THE COURT:  If we don't finish going through this

5   process this morning, we will complete it this afternoon.  I

6   still want you to know that you should take all the time you

7   need to the extent you have any questions as to anything that

8   I'm saying that you want to discuss with your lawyers.  OK?

9            THE DEFENDANT:  All right.

10           THE COURT:  Because I will ask you questions today,

11  Mr. Blair, I am going to place you under oath.  I'll ask you to

12  please stand and raise your right hand.

13           (Defendant sworn)

14           THE COURT:  Mr. Blair, you are now under oath, which

15  means that if you answer any of my questions falsely, you may

16  be prosecuted for the separate crime of perjury.  Do you

17  understand that?

18           THE DEFENDANT:  Yes, understood.

19           THE COURT:  And what is your full name, sir?

20           THE DEFENDANT:  Jamal Blair.

21           THE COURT:  How old are you?

22           THE DEFENDANT:  Twenty-five.

23           THE COURT:  How far did you go in school?

24           THE DEFENDANT:  Tenth grade.

25           THE COURT:  Have you ever been treated for any kind of

 1   mental illness?

 2        THE DEFENDANT:  As far as what, what kind of mental

 3   illness?

 4        THE COURT:  Like depression, anxiety, anything by a

 5   psychologist.

 6        THE DEFENDANT:  No.

 7        THE COURT:  Have you ever been under the care of a

 8   psychiatrist or psychologist?

 9        THE DEFENDANT:  When you say care, like what you mean?

10        THE COURT:  Did you meet with them, talk about your

11   feelings?

12        THE DEFENDANT:  Yes.

13        THE COURT:  And was that in prison or outside of

14   prison?

15        THE DEFENDANT:  Outside of prison.

16        THE COURT:  What was that for?

17        THE DEFENDANT:  Mental health.

18        THE COURT:  Did that doctor give you any medication to

19   take for mental health issues?

20        THE DEFENDANT:  Yeah.

21        THE COURT:  Do you remember what kind of medication?

22        THE DEFENDANT:  Remeron.

23        THE COURT:  How did that help you?

24        THE DEFENDANT:  It was a long time ago.  I can't

25   really remember.

1              THE COURT:  How old were you?

2              THE DEFENDANT:  Fourteen, 15.

3              THE COURT:  And do you know the mental illness that

4    you were treated for?  Was it anxiety or depression or

5    addiction or something else?

6              THE DEFENDANT:  I can't really recall.

7              THE COURT:  Counsel, do you know what the mental

8    illness is that he was treated for?

9              MR. STERN:  I think he has a quite complex history,

10   but I don't think it was a specific diagnosis as to any one

11   thing or another.  I think he has had a history of being

12   treated.

13             THE COURT:  Anything that interferes, from what you

14   know, with his ability to communicate with counsel or

15   understand the nature of the proceedings or the like?

16             MR. STERN:  Absolutely not.

17             THE COURT:  Mr. Blair, other than what you mentioned,

18   have you been under the care of a psychologist or a

19   psychiatrist or is that the only time?

20             THE DEFENDANT:  Ain't the same thing?

21             THE COURT:  I'm just asking if that was the only time.

22   You said it was a long time ago.  Have you been under the care

23   of a psychologist or psychiatrist more recently?

24             THE DEFENDANT:  I visited the counselor psychiatrist a

25   few times, but nothing more than that.

1          THE COURT:  How about, are you under the care of a

2   doctor now?

3          THE DEFENDANT:  No.

4          THE COURT:  And have you ever been treated for any

5   type of addiction?

6          THE DEFENDANT:  No.

7          THE COURT:  Have you taken any drugs, medicine, pills

8   or alcoholic beverages in the past two days?

9          THE DEFENDANT:  No.

10          THE COURT:  Your mind is clear today?

11          THE DEFENDANT:  Clear.

12          THE COURT:  And you understand what's happening here

13   today?

14          THE DEFENDANT:  Understood.

15          THE COURT:  Does either counsel have any doubt as to

16   Mr. Blair's competence to plead at this time?

17          MS. FEINSTEIN:  No, your Honor.

18          MR. NEUFELD:  No, your Honor.

19          THE COURT:  On the basis of Mr. Blair's responses to

20   my questions, my observations of his demeanor here in court,

21   and the representations of counsel, I do find that the

22   defendant is fully competent to enter an informed plea of

23   guilty at this time.

24          Mr. Blair, I do want to make sure that you received a

25   copy of the indictment in this case.  This is the document that

1   contains the charges against you.  Did you receive that?

2             THE DEFENDANT:  Yes.

3             THE COURT:  And did you have an opportunity to read it

4   and discuss it with your lawyer?

5             THE DEFENDANT:  Yes, I did.

6             THE COURT:  Have you had enough of a chance to discuss

7   with your lawyer the charge to which you intend to plead guilty

8   and any possible defenses to that charge?

9             THE DEFENDANT:  Yes.

10            THE COURT:  And has your lawyer has explained to you

11  the consequences of entering a plea of guilty?

12            THE DEFENDANT:  Yes.

13            THE COURT:  And are you satisfied with your lawyer's

14  representation?

15            THE DEFENDANT:  Yes.

16            THE COURT:  I am now going to explain certain

17  constitutional rights that you have.  These are rights that

18  you'll be giving up if you enter a guilty plea.  Again, please

19  listen carefully to what I'm about to say and if there is

20  anything that you don't understand, let me know and either your

21  lawyer or I will explain the matter more fully.

22            Under the Constitution and laws of the United States,

23  you have a right to plead not guilty to the charges in the

24  indictment.  Do you understand that?

25            THE DEFENDANT:  Yes.

1          THE COURT:  If you did plead not guilty, you would be

2    entitled to a speedy and public trial by a jury on the charges

3    contained in this indictment.  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  At a trial you would be presumed to be

6    innocent and the government would be required to prove you

7    guilty by competent evidence beyond a reasonable doubt before

8    you could be found guilty.  Do you understand that?

9          THE DEFENDANT:  Run that back again.

10         THE COURT:  Sure.  At a trial you would be presumed to

11   be innocent and the government would have to prove you guilty

12   by competent evidence and beyond a reasonable doubt.  You

13   understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  A jury of 12 people would have to agree

16   unanimously that you were guilty.  You would not have to prove

17   that you were innocent if you were to go to trial.  Do you

18   understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At that trial and at every stage of your

21   case you would be entitled to be represented by a lawyer.  If

22   you couldn't afford a lawyer, one would be appointed at public

23   expense, that is, free of cost to you, to represent you.  Do

24   you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  During a trial the witnesses for the

2    government would have to come to court and testify in your

3    presence.  Your lawyer could cross-examine the witnesses for

4    the government, they could object to evidence offered by the

5    government, and they could offer evidence on your own behalf if

6    you so desired.  You understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You would also have the right to have

9    subpoenas issued or other process used to compel witnesses to

10   testify in your defense.  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At a trial, although you would have the

13   right to testify if you chose to do so, you would also have the

14   right not to testify.  If you decided not to testify, no one,

15   including the jury, could draw any inference or suggestion of

16   guilt from the fact that you did not testify.  Do you

17   understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  If you were convicted at a trial, you

20   would have the right to appeal that verdict.  Do you understand

21   that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Even now, as you are here entering this

24   plea, you do have the right to change your mind, plead not

25   guilty, and go to trial on the charges contained in this

1    indictment.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  If you plead guilty and if I accept your

4    plea, you will give up your right to a trial and the other

5    rights I have just discussed other than the right to a lawyer,

6    which you have regardless of whether or not you plead guilty.

7    If you plead guilty there will be no trial and I'll enter a

8    judgment of guilty and then at a later date I'll sentence you

9    on the basis of your plea, after I have considered a

10   presentence report and whatever submissions I get from your

11   lawyer and from the government.  You understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you plead guilty there will be no trial

14   and no appeal with respect to whether you did or did not commit

15   this crime.  You understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  If you plead guilty, you'll also have to

18   give up your right not to incriminate yourself because I'll ask

19   you questions about what you did in order to satisfy myself

20   that you are guilty as charged.  You'll have to admit and

21   acknowledge your guilt.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. Blair, are you willing to give up your

24   right to a trial and the other rights I have just discussed

25   with you?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Turning to the charge in Count One, you

3   understand that you are charged with participating in a

4   racketeering conspiracy.  Do you understand that's the charge?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Ms. Feinstein, would you please state the

7   elements of the offense in question?

8           MS. FEINSTEIN:  Yes, your Honor.

9           THE COURT:  Go ahead.

10           MS. FEINSTEIN:  At trial the government would be

11   required to prove beyond a reasonable doubt each of the

12   following elements of a racketeering conspiracy:  First, an

13   enterprise, and that is as defined in Title 18, United States

14   Code, Section 1961, subsection 1, existed.  Here, that's an

15   association in fact with the Big Money Bosses gang; second, the

16   enterprise was engaged in or its activities affected interstate

17   or foreign commerce; and, third, the defendant knowingly agreed

18   that a conspirator, which could include the defendant himself,

19   would commit two or more predicate racketeering acts in

20   furtherance of the enterprise.  The government would also be

21   required to prove venue in the Southern District of New York by

22   a preponderance of the evidence.

23           THE COURT:  Counsel, let me ask, the racketeering

24   activity that the government understands Mr. Blair to be

25   pleading to pursuant to this agreement is what?

1          MS. FEINSTEIN:  The distribution of marijuana.  As

2    part of the plea agreement the parties have also agreed that

3    the defendant will admit that he committed a homicide, as set

4    forth on page 1 of the plea agreement dated November 9, 2016.

5          THE COURT:  And both of those things are racketeering

6    activity, as the government understands this plea?  I ask that

7    because the plea agreement lays out life as the maximum

8    sentence.  What the maximum sentence turns on is the underlying

9    racketeering activity.

10         MS. FEINSTEIN:  Yes, your Honor.  If you would give me

11   one moment just to speak with defense counsel.

12         THE COURT:  Yes.

13         MS. FEINSTEIN:  That's right, your Honor.  The

14   homicide is a racketeering act.

15         THE COURT:  I'll ask you, just because I interrupted

16   you, counsel, if you would repeat what the elements of the

17   offense in question.

18         MS. FEINSTEIN:  Of course, your Honor.

19         THE COURT:  Just give me one minute as I think defense

20   counsel is just explaining to Mr. Blair what your conversation

21   included.

22         MR. NEUFELD:  Thank you, Judge.

23         MS. FEINSTEIN:  The elements, your Honor, are:  First,

24   an enterprise that's an association in fact, here it's the Big

25   Money Bosses gang and that enterprise existed; second, the

1   enterprise was engaged in or its activities affected interstate

2   or foreign commerce; and, third, the defendant knowingly agreed

3   that a conspirator, which could include the defendant himself,

4   would commit two or more predicate racketeering acts in

5   furtherance of the enterprise.  The government would also prove

6   venue in the Southern District of New York by a preponderance

7   of the evidence.

8           THE COURT:  Mr. Blair, did you hear the lawyer for the

9   government state what the elements of the offense in question

10  are?

11          THE DEFENDANT:  No.  I think she might have to talk

12  more into the mic so I can hear it.

13          THE COURT:  Fair enough.  I'll ask her to repeat it

14  again.  Ms. Feinstein, if you could pull the microphone up

15  close.

16          MS. FEINSTEIN:  First there was an enterprise, and

17  that's as defined in Title 18, United States Code, Section

18  1961, subsection 1.  And in that statute, and that defines it,

19  it could be an association in fact rather than a formal

20  enterprise, like a business, for example.

21          MR. STERN:  Can I stop for a minute after each element

22  and make sure he understands each one as we go long.

23          MS. FEINSTEIN:  Here that's a gang, the Big Money

24  Bosses gang.  The first element is that an enterprise existed

25  here that enterprise is the Big Money Bosses.  That's the first

1    element.  Can you hear that, Mr. Blair?

2              MR. STERN:  He understands that.

3              THE COURT:  The second element.

4              MS. FEINSTEIN:  The second element is that enterprise,

5    so the Big Money Bosses gang was engaged in or its activities

6    affected interstate or foreign commerce.

7              MR. STERN:  He understands that as well.

8              THE COURT:  Thank you.

9              MS. FEINSTEIN:  Third, that the defendant knowingly

10   agreed that a conspirator, so that could be the defendant

11   himself or other individuals, would commit two or more

12   predicate racketeering acts in furtherance of the enterprise,

13   the gang.

14             MR. STERN:  He understands that one.

15             THE COURT:  Those elements, Mr. Blair, that the

16   government just stated, I want to make sure that you

17   understand, if you were to go to trial the government would

18   have to prove those elements beyond a reasonable doubt to the

19   jury in order for you to be found guilty.  Do you understand

20   that?

21             THE DEFENDANT:  Are you saying if I was to go to trial

22   the government would have to prove these allegations that I was

23   in BMB and this, that, and the third?

24             THE COURT:  They would have to prove that BMB existed

25   as an enterprise and that is a term that the law defines.  They

1   would have to prove that beyond a reasonable doubt.  They would

2   have to prove that this enterprise, BMB, engaged in activity

3   that affected interstate commerce, so things crossing state

4   lines were involved.  That's often drugs and the like.  And

5   they would have to prove that you knowingly engaged in acts in

6   furtherance -- that you knowingly associated with this

7   enterprise.

8          Ms. Feinstein, state to me how you stated its third

9   element.

10          MS. FEINSTEIN:  Yes.  That the defendant agreed that

11  either himself or other individuals would commit two or more

12  predicate racketeering acts, so criminal acts, that furthered

13  the gang.  So to be clear, the government doesn't have to prove

14  that the defendant was a member of the gang but merely that he

15  essentially associated with members of the gang and agreed that

16  either himself or they committed two or more acts that

17  furthered the gang.

18          THE DEFENDANT:  Understood.

19          THE COURT:  Those are the elements that the government

20  would have to prove at trial beyond a reasonable doubt for you

21  to be found guilty.  You understand that?

22          THE DEFENDANT:  Understood.

23          THE COURT:  Now I am going to talk to you about the

24  maximum possible penalties that you face for this crime.  The

25  maximum means the most that could possibly be imposed.  It

1    doesn't mean that's what you will receive, but you do have to

2    understand that by pleading guilty you are exposing yourself to

3    the possibility of receiving any combinations of punishment up

4    to the maximum that I'm about to describe.  You understand

5    that?

6              MR. STERN:  If I can have one second.

7              THE COURT:  Sure.

8              THE DEFENDANT:  Understood.

9              THE COURT:  First, I am going to talk about the

10   maximum possible restrictions on your liberty, including the

11   maximum possible amount of imprisonment.

12             Here the maximum term of imprisonment for Count One is

13   life and that whatever term you receive could be followed by up

14   to five years of supervised release.  Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And just to go back for a moment to that

17   term supervised release, that means that you would be subject

18   to supervision by the probation department upon release and

19   there would be rules of supervised release that you'd have to

20   follow.  If you were to violate those rules you can be returned

21   to prison without a jury trial to serve additional time with no

22   credit for time you served in prison as a result of your

23   sentence and no credit for any time spent on postrelease

24   supervision.  Do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  In addition to the restrictions on your

2     liberty, the maximum possible punishment also includes certain

3     financial penalties.  Here the maximum allowable fine is

4     $250,000.  I can also order restitution to any person or entity

5     injured as a result of your criminal conduct.  I can also order

6     you to forfeit all property derived from the offense or used to

7     facilitate the offense and, finally, I must order a mandatory

8     special assessment of $100.  Do you understand that what I've

9     just described are the maximum possible financial penalties you

10    face for this crime?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Mr. Blair, you are a United States

13    citizen, is that correct?

14         THE DEFENDANT:  Correct.

15         THE COURT:  You should understand that as a result of

16    your guilty plea you may lose certain valuable civil rights to

17    the extent that you have them now or could otherwise obtain

18    them now, such as the right to vote, the right to hold public

19    office, the right to serve on a jury, and the right to possess

20    any kind of firearm.  Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, you are serving another sentence now,

23    is that correct?

24         THE DEFENDANT:  Correct.

25         THE COURT:  Are you facing any additional charges in

1  state or federal court?

2          THE DEFENDANT:  One to three.

3          THE COURT:  Those are charges you're facing?

4          THE DEFENDANT:  No.

5          MR. STERN:  All of his state court charges are

6  resolved and this is his only federal case.

7          THE COURT:  And you are currently serving a sentence

8  in state court, is that correct?

9          THE DEFENDANT:  Yes.

10          THE COURT:  What I want you to understand is that your

11  state and federal sentence could be consecutive.  That means

12  any sentence that gets imposed in this case could be added onto

13  the end of any other sentence you have to serve.  You

14  understand that?

15          Take your time.

16          MR. NEUFELD:  Your Honor, in this particular case we

17  believe that all of the acts that he is serving time for in the

18  state are relevant conduct in this case.  So we have told him,

19  and we believe this to be the law, that a consecutive sentence

20  as a matter of law will not occur in this case.

21          THE COURT:  Ms. Feinstein, what provision do you have

22  in mind that would require a mandatory concurrent sentence?

23          MR. STERN:  Judge, I'm sorry.  I don't have that in

24  front of me now.  But it is our understanding that the majority

25  of his sentence in the state court is for the exact homicide

1    that he's pleading guilty to here.  I can write you a letter

2    about it if you'd like.  I don't know at this moment.  But it's

3    our understanding that they must run concurrently because they

4    are the exact same act that sets the guidelines here.

5              THE COURT:  Ms. Feinstein.

6              MS. FEINSTEIN:  Your Honor, I'm not familiar with that

7    law.  I believe there are provisions under the guidelines that

8    address that.

9              THE COURT:  That's my memory.

10             MS. FEINSTEIN:  I believe guidelines Section 5G1.3

11   addresses that, and it would be subsection B.

12             THE COURT:  Sub B, which I'll read.  If subsection A

13   does not apply, which it doesn't, and a term of imprisonment

14   resulted from another offense that is relevant conduct to the

15   instant offense of conviction, the sentence for the instant

16   offense shall be imposed as follows.  The Court shall adjust

17   the sentence for any period of imprisonment already served on

18   the undischarged term of imprisonment if the Court determines

19   that such period of imprisonment will not be credited to the

20   federal sentence by the Bureau of Prisons.  And the sentence

21   for the instant offense shall be imposed to run concurrently to

22   the remainder of the undischarged term of imprisonment.

23             MS. FEINSTEIN:  Your Honor, I think it's sometimes

24   unclear and more research has to be done into whether the

25   Bureau of Prisons will credit a federal sentence or not.

1    Typically those conversations occur prior to sentencing.  Sort

2    of regardless, the guidelines, as your Honor well knows, are

3    not binding on the Court.

4         THE COURT:  I'm certainly not prepared to suggest that

5    anything other than it could be consecutive, which is candidly

6    what I've said in every allocution, every plea colloquy I've

7    ever done in five years.  I've done a lot of them.  Unless I've

8    got some clear basis to say otherwise, you might be right.

9    Obviously, clearly I'd have the discretion to run them

10   concurrently at the same time.  There is no doubt about that.

11   But for purposes of understanding the maximum consequences

12   possible under this agreement, I think we need to have

13   authority for what you've described to Mr. Blair before

14   proceeding.

15        MR. NEUFELD:  Your Honor, I think we will be happy to

16   address this in our sentencing submission.  In terms of the

17   facts of the case, he is going to be allocuting and pleading

18   guilty today to having fired the shot that killed Sadie

19   Mitchell, which is the exact same thing that he pled guilty to

20   and was sentenced in the Bronx for doing both in terms of a gun

21   possession charge that carried a 14-year sentence and a

22   manslaughter charge that carried a five to 15-year sentence.

23   As a practical matter, I think we should just all understand

24   that the most serious charge here is the same as the most

25   serious charge that he's already serving time for.

1          THE COURT:  Understood.

2          MR. NEUFELD:  Secondly, we all understand that the

3     Court has the power and the discretion to sentence outside of

4     the guidelines and to sentence him up to life on what he's

5     pleading guilty to today.  If the Court were to sentence him to

6     life and that would run concurrent or consecutive to his state

7     charge, that would be of little moment, I think.  And we will

8     be happy to address the current and consecutive issue in our

9     sentencing submission.  I hope that satisfies your Honor.

10          THE COURT:  Just a moment.

11          Certainly what you said is accurate and I agree with

12     it and I just want to make absolutely certain that Mr. Blair

13     understands it and is comfortable proceeding in light of the

14     discussion which preceded it.

15          THE DEFENDANT:  I'm not comfortable with it.  I'm

16     saying -- I'm being charged with the same crime, what I already

17     copped out to.  You tell me they are running consecutive.

18          THE COURT:  No.  I'm saying that it is possible, it is

19     possible.  I'm making no determinations as to that now.

20          THE DEFENDANT:  It is just a reminder, letting me know

21     it's possible.

22          THE COURT:  I want you to make sure that before you

23     enter a formal plea of guilty that you understand all of the

24     possible maximum consequences that could happen.  One

25     possibility is that I could run the sentence here consecutive

1   to the sentence you're already serving.

2              THE DEFENDANT:  For the same crime?

3              THE COURT:  Yes.

4              THE DEFENDANT:  Understood.

5              THE COURT:  Thank you, Mr. Blair.  Do you need any

6   more time to discuss this with your attorneys or you feel

7   comfortable proceeding?

8              THE DEFENDANT:  Yeah.

9              THE COURT:  You're OK to proceed.

10             I do want to make sure that you understand, Mr. Blair,

11  that if your lawyer or anyone else has attempted to predict

12  what your sentence will be, the prediction could be wrong.  No

13  one, not your lawyer, not the government's lawyer, no one could

14  give you any promise as to what your sentence will be since I

15  am going to decide your sentence and I am not going to do that

16  now.  I am going to wait until I receive a presentence report

17  that will be prepared by the probation department.  I will do

18  my own independent calculation of the sentencing guideline

19  range.  I'll consider that and any possible departures from it.

20  And at base I will determine what a reasonable sentence is for

21  you based on the sentencing factors that are contained in a

22  statute called 18 U.S.C. Section 3553(a).  You understand all

23  that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You've discussed these issues with your

1    lawyers, is that right?

2              THE DEFENDANT:  I have discussed the issues as far as

3    what you just said a while ago?

4              THE COURT:  Yes.

5              THE DEFENDANT:  Yeah.

6              THE COURT:  Even if your sentence is different from

7    what your lawyer or anyone else has told you it might be, even

8    if it is different from what you expect or from what's

9    contained in the plea agreement that you entered into with the

10   government, you will still be bound by your guilty plea and

11   will not be allowed to withdraw your plea of guilty.  Do you

12   understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Now, I understand, Mr. Blair, that there

15   is a plea agreement entered into between you and your lawyer

16   and the lawyer for the government.  Is that correct?

17             THE DEFENDANT:  Understood.

18             THE COURT:  So that the plea agreement that you've

19   entered into with the government, I'm looking at what I

20   understand is the original here.  On the front page it's dated

21   November 9, 2016 and it appears to be eight pages long.  My

22   deputy will mark it as Court Exhibit 1 and place the original

23   in front of Mr. Blair.

24             Do you have it in front of you, Mr. Blair?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And on the front page is it dated November

2    9, 2016?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  And on the last page, the eighth page, is

5    that your signature?

6          THE DEFENDANT:  Yeah.

7          THE COURT:  And did you sign it today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Did you sign it in the presence of your

10   lawyer?

11         THE DEFENDANT:  I did.

12         THE COURT:  And at some point before you signed this

13   document did you read it?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And did you discuss it with your lawyer?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And do you believe that you fully

18   understood it before you signed it?

19         THE DEFENDANT:  I think I understood it.

20         THE COURT:  You feel that you do understand it, is

21   that right?

22         THE DEFENDANT:  Yes.

23         THE COURT:  One of the features of this agreement with

24   the government is that you've agreed on the guideline range

25   that applies in this case, something called the stipulated

1   guideline range.  You understand that?

2                   THE DEFENDANT:  Yes.

3                   THE COURT:  And in your agreement with the government

4   that stipulated guideline range is 120 to 150 months, is that

5   correct?

6                   THE DEFENDANT:  I didn't hear what you said.

7                   THE COURT:  The stipulated guideline range is 120 to

8   150 months' imprisonment?

9                   THE DEFENDANT:  Yes.  I understand.

10                  THE COURT:  It's important to understand that

11  agreement is binding on you and it's binding on the government,

12  but it is not binding on me.  I do have my own obligation to

13  determine the correct guideline range and what the appropriate

14  sentence is in your case.  I'm not saying I will come up with

15  any range different from the one that you agreed to with the

16  government, but if I do, I will not let you withdraw your plea,

17  even if the range I determine is higher than the one that you

18  agreed to with the government.  Do you understand that?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  In your plea agreement you waived your

21  right to appeal or otherwise challenge any sentence that is 150

22  months or more.  In other words, if I sentence you to 150

23  months or anything less than 150 months, you would have no

24  right to appeal or otherwise try to challenge that sentence.

25  Do you understand that?

1              THE DEFENDANT:  Correct.

2              THE COURT:  Counsel, are there any other aspects of

3   the agreement that you'd like to highlight at the conference?

4              MR. STERN:  No.

5              MS. FEINSTEIN:  No, your Honor.

6              THE COURT:  Mr. Blair, does the written plea agreement

7   that we have been discussing, does that constitute your

8   complete and total understanding of the entire agreement

9   between you and the government?

10             THE DEFENDANT:  What are you talking about, this right

11  here?

12             THE COURT:  What's dated November 9, 2016.  That's the

13  agreement?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Does that make up your complete and total

16  understanding of the entire agreement between you and the

17  government?  Is there anything else?

18             THE DEFENDANT:  No, there ain't nothing else.

19             THE COURT:  I'll just ask it a different way.  Other

20  than what's written in this agreement, has anyone made a

21  promise to you or offered you any reason to plead guilty or to

22  sign this agreement?

23             THE DEFENDANT:  No.

24             THE COURT:  Has anyone threatened you or forced you to

25  plead guilty or to sign the plea agreement?

1          THE DEFENDANT:  No.

2          THE COURT:  Has anyone made a promise to you as to

3   what your sentence will be?

4          THE DEFENDANT:  No.

5          THE COURT:  I'll ask the government to please maintain

6   the original of the plea agreement in its records.  Thank you.

7          What I am going to ask you to do now is tell me in

8   your own words what you did that makes you believe that you are

9   guilty of Count One charged in the indictment.

10          THE DEFENDANT:  On October 20, 2009, in the Bronx, I

11   fired a shot that murdered -- accidentally killed Sadie

12   Mitchell.  Also, in the Bronx, in '09, I sold marijuana on two

13   occasions as part of a gang conspiracy charge in Count One.

14          THE COURT:  Ms. Feinstein, any questions you would

15   like me to ask Mr. Blair?

16          MS. FEINSTEIN:  I just want to put on the record, your

17   Honor, that the gang charged in Count One that the defendant

18   referred to is the Big Money Bosses and that the defendant's

19   sale of marijuana, the government would prove, was in

20   furtherance of the activities of the Big Money Bosses gang.

21          THE COURT:  Mr. Blair, you disagree with anything the

22   government just said?

23          THE DEFENDANT:  No.  I didn't really hear what she

24   said.

25          THE COURT:  Ms. Feinstein, would you repeat it.

1          MS. FEINSTEIN:  The defendant allocuted that he sold

2     marijuana on two occasions as part of a gang charged in Count

3     One.  And I just wanted to put on the record that that gang is

4     the Big Money Bosses gang and that the defendant sold

5     marijuana, as he just indicated, in furtherance of the Big

6     Money Bosses gang.

7          THE COURT:  Did you hear, Mr. Blair?

8          THE DEFENDANT:  Yes, I did.

9          THE COURT:  Do you disagree with anything the

10    government just said?

11         THE DEFENDANT:  I disagree, but it doesn't matter.

12    Yes, I agree.

13         THE COURT:  Ms. Feinstein, no questions you want me to

14    ask Mr. Blair?

15         MS. FEINSTEIN:  Just to clarify whether he agrees or

16    disagrees --

17         THE COURT:  He said he agreed.

18         MS. FEINSTEIN:  Yes, your Honor.  That's fine.

19         THE COURT:  Let me ask defense counsel, do you know of

20    any valid defense that would prevail at trial or any reason why

21    your client should not be permitted to plead guilty?

22         MR. NEUFELD:  It would be a possible statute of

23    limitations defense to the current indictment that he would be

24    waiving by pleading here.  We don't know whether it would

25    prevail at trial or not, but it's a possible defense.  If there

1  were to be a superseding indictment in this case that charged

2  the capital murder count for the Sadie Mitchell homicide, the

3  statute of limitations would not apply.  So it's totally in his

4  interests to waive that possible defense at this time.

5            THE COURT:  I assume, but just for the record, that

6  you've had discussions with Mr. Blair and explored these issues

7  with him?

8            MR. NEUFELD:  Absolutely.

9            THE COURT:  Mr. Blair, you believe you've had

10  sufficient time to discuss the issue with your lawyers that

11  they just mentioned?

12            THE DEFENDANT:  Correct.

13            THE COURT:  And let me ask defense counsel if you

14  agree there is a sufficient factual predicate for the guilty

15  plea.

16            MR. NEUFELD:  Yes.

17            THE COURT:  Ms. Feinstein, will you please proffer

18  what evidence the government would bring, if we were to go to

19  trial, with respect to Mr. Blair.

20            MS. FEINSTEIN:  Yes, your Honor.  At trial the

21  government would prove beyond a reasonable doubt through the

22  following evidence that the defendant was engaged in a

23  racketeering conspiracy.  The proof includes the testimony of

24  cooperating witnesses, law enforcement witnesses, documentary

25  evidence, including the results of search warrants that were

1    executed on social media accounts and cell phones, and

2    narcotics seized.

3           And using that evidence we would show that from at

4    least in or about 2007 to in or about 2016, the defendant was

5    an associate of a street gang called the Big Money Bosses, or

6    BMB, and that it was a criminal enterprise based in the Bronx,

7    New York.  Members and associates of BMB engaged in illegal

8    activities, including shootings of rival gang members, the

9    distribution of narcotics, including crack cocaine and

10   marijuana and other criminal acts.  BMB members and associates

11   acknowledge their group affiliation by, among other things,

12   creating and placing on social media services, such as Facebook

13   and YouTube, photographs and rap videos that celebrated their

14   gang and its illegal activities.

15          The defendant and other members, associates of BMB

16   agreed to commit and the defendant personally participated in

17   racketeering acts in furtherance of BMB's affairs.  These

18   include, for example, on at least two occasions the defendant

19   engaged in the sale of marijuana along with other individuals

20   associated with BMB and on behalf of BMB.

21          THE COURT:  Let me ask counsel for both sides if you

22   know of any reason I should not accept the defendant's plea of

23   guilty.

24          MS. FEINSTEIN:  No, your Honor.

25          MR. NEUFELD:  No, your Honor.

 1          THE COURT:  Mr. Blair, based on everything we have

 2   discussed today, I'm now going to ask you how you formally wish

 3   to plead here with respect to Count One of the superseding

 4   indictment.  That's S2 15 Cr. 95.  Count One.  Do you wish to

 5   plead guilty or not guilty?

 6          THE DEFENDANT:  Guilty.

 7          THE COURT:  Mr. Blair, because you acknowledge that

 8   you're in fact guilty as charged in the indictment, because I'm

 9   satisfied that you know of your rights, including your right to

10   go to trial, and that you're aware of the consequences of your

11   plea, including the sentence which may be imposed, and because

12   I find that you are knowingly and voluntarily pleading guilty,

13   I accept your guilty plea and enter a judgment of guilty on

14   Count One of the superseding indictment.  The probation

15   department will want to interview you in connection with the

16   presentence report that it will prepare.

17          Mr. Stern, does defense counsel wish to be present for

18   any interview in connection with the report?

19          MR. STERN:  We do, yes.

20          THE COURT:  I've ordered the preparation of the

21   presentence report.  I do order there be no interview unless

22   defense counsel is present.

23          Mr. Blair, if you choose to speak to the probation

24   department, please make sure that anything you say is truthful

25   and accurate.  I will read the report carefully and it's

1    important to me in deciding what sentence to impose.  You and

2    your counsel have an opportunity to read the report and examine

3    it, and I do urge you to do so and discuss it with your lawyer

4    before sentencing.  If there are any mistakes in the report,

5    please point them out to your lawyer so he can bring them to my

6    attention.

7        I believe you discussed the following date for

8    sentencing:  February 24, 2017, at 11 a.m.  Without objection,

9    sentencing is set for that date and time.

10       I direct the government to provide the probation

11   officer with its factual statement within seven days.

12       Defense counsel, please arrange for Mr. Blair to be

13   interviewed by the probation department within the next two

14   weeks.

15       I do refer counsel to my individual rules and

16   practices for criminal cases available on the court's website

17   which contains some rules regarding sentencing submissions.  In

18   accordance with those rules, the defense submission is due one

19   week prior to sentencing and the government's submission is due

20   three days prior to sentencing.  Defendant shall remain in

21   custody pending sentencing.

22       Counsel, is there anything else that I can address at

23   this time?

24       MR. STERN:  Judge, can we have three weeks to prepare

25   the probation interview?  Because next week is taken up a lot

1   by Thanksgiving.

2          THE COURT:  Fair enough.  Within the next three weeks.

3   Thank you.

4          Anything else, counsel?

5          MR. NEUFELD:  No.

6          THE COURT:  Thank you.  I'll see everyone February 24.

7          We are adjourned.

8                            o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25